**United States Court of Appeals**
**Fifth Circuit**

**F I L E D**

**August 18, 2004**

Charles R. Fulbruge III
Clerk

**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

---

No. 03-50520

---

UNITED STATES OF AMERICA,

Plaintiff-Appellant-Cross-Appellee,

versus

BOBBY PHILLIPS, JR.,

Defendant-Appellee-Cross-Appellant.

---

Appeals from the United States District Court
for the Western District of Texas

---

Before KING, Chief Judge, DeMOSS and STEWART, Circuit Judges.

CARL E. STEWART, Circuit Judge:

In this criminal appeal, the Government challenges the district court's downward departure

from the otherwise applicable statutory mandatory minimum sentence of 10 years' imprisonment,

arguing that no recognized exception to the statutory minimum applies in this case. Bobby Phillips,

Jr., cross-appeals the district court's denial of his motion to suppress evidence of crack cocaine and

other items seized from a backyard storage shed located on property belonging to another individual.

For the following reasons, we affirm the district court's denial of Phillips' motion to suppress, but

reverse the district court's sentencing determination, vacate the sentence, and remand for resentencing consistent with this opinion.

## FACTUAL AND PROCEDURAL BACKGROUND

On the evening of July 14, 2000, San Antonio Police Department ("SAPD") Officer Nick Stromboe, working patrol on the east side of San Antonio, Texas, saw Bobby Phillips exit a vehicle driven by Anthony Davis at the corner of St. Martin and Nolan streets. Phillips, wearing yellow gloves, carried in one hand a grocery bag which was weighed down by its contents and a box of sandwich baggies in his other hand. Fro m his position about 20 feet away from Phillips, Officer Stromboe observed what appeared to be crack cocaine powder on Phillips' gloves. Although Officer Stromboe gave Phillips verbal orders to approach him, Phillips looked at Stromboe, turned, and walked away, westbound down an alley.

Officer Stromboe followed Phillips down the alleyway to the rear property line of a single family residence and backyard shed owned by Davis' great-grandmother, Annie Thompson. Thompson's property was not enclosed; specifically, the border between her property line and the alley consisted of a fence, the shed, a four-foot opening, and a dilapidated three-foot fence. Officer Stromboe observed Phillips walk over to the shed, lift the corner of its tin roof, and drop the grocery bag into the shed. Stromboe then saw Phillips discard his gloves and the box of baggies in a nearby trash can, also situated along the border of the Thompson property adjacent to the alleyway. Phillips approached Stromboe, who then placed Phillips in handcuffs. As Stromboe and Phillips were walking back to the patrol car, Stromboe asked the defendant what he had thrown in the shed. Phillips replied that the bag had just contained marihuana.

2

Officer Stromboe momentarily waited for backup, then proceeded to retrieve the evidence which Phillips had discarded in the shed and the trash can. Accompanied by Officer Jeffrey Woolridge, Officer Stromboe walked to the shed and attempted to lift its roof, but was unable to do so.

Meanwhile, Thompson, the owner of the residence, had already observed from her window that Phillips and Davis were handcuffed and that about four officers were at the scene. Thompson testified that a "lady officer" then told her that she would lose her home if she did not allow the officers to look inside the shed. After the officers were unable to retrieve the evidence by lifting the roof of the shed, they asked Thompson if she would open the front door of the shed. Thompson responded "Certainly," went inside to obtain the key, returned, and opened the door to the shed.

Because the shed was cluttered with items that completely blocked access to the corner where the grocery bag lay, Stromboe took a chair from the backyard, placed it next to the corner of the shed, and stood on it. Stromboe was then able to open the roof of the shed, reach in, and retrieve the only grocery bag in that corner. Stromboe opened the bag and found a scale and five separate bags each containing a substance which later field-tested positive for cocaine base. Stromboe also recovered the yellow gloves and the baggies from the trash can.

After the evidence was recovered, Phillips was transported to the SAPD substation. Phillips was advised of his constitutional rights both upon arrival and when subsequently interviewed by a Drug Enforcement Administration ("DEA") agent. During this interview, Phillips admitted that the baggies of cocaine found in the shed belonged to him. The Thompson residential property is within 1,000 feet of the real property comprising a public elementary school.

3

On August 16, 2000, Phillips was charged by grand jury indictment of possessing with intent to distribute more than five but less than fifty grams of cocaine base, in violation of 21 U.S.C. § 841 (a) (1) and 841 (b) (1) (B) (Count 1), and possessing with intent to distribute more than fifty grams of cocaine base, in violation of 21 U.S.C. § 841 (a) (1) and 841 (b) (1) (A), within 1,000 feet of a school yard, in further violation of 21 U.S.C. § 860 (Count 2).[1]  Phillips moved to suppress the cocaine and items seized from the shed located on the Thompson property.[2]  Following an evidentiary hearing, the district court initially granted Phillips' motion to suppress, finding that the defendant had standing to assert a Fourth Amendment privacy interest in the Thompson residence which extended to the backyard shed, based upon a longstanding social and familial relationship that existed between the Phillips and Thompson-Davis families.  On reconsideration, however, the district court withdrew its order granting Phillips' suppression motion and entered a new order denying the defendant's motion, adopting in part the factfindings and legal conclusions proposed by the Government.  Specifically, the district court concluded that Phillips lacked standing to contest the constitutionality of the warrantless search.  Phillips pleaded guilty to Count 2 of the indictment, conditioned on his right to appeal from the district court's denial of his motion to suppress.[3]

---

[1]The Government later dismissed Count 1 of the indictment.

[2]Phillips' motion did not seek to suppress the evidence recovered from the trash can.

[3]Though Phillips did not have a written plea agreement, the defendant made the entry of his guilty plea conditional by expressly reserving the Fourth Amendment issue for appeal during the district court's Rule 11 colloquy.

The Presentencing Report ("PSR" or "report") calculated Phillips base offense level under USSG § 2D1.1 (2000),[4] recommending a base offense level of 32 for the defendant's § 841 (a) (1) and 841 (b) (1) (A) offense involving more than 50 grams but less than 150 grams of cocaine base. See USSG § 2D1.1 (4). Phillips' PSR also recommended a two-level enhancement pursuant to USSG § 2D1.2 (a) (1) (Special Offense Characteristics) for the defendant's commission of the relevant offense near a protected location (here, the elementary school). Phillips' total offense level of 34, coupled with a Criminal History Category of I, yielded a Sentencing Guideline range of 151 to 188 months' imprisonment.

At sentencing, the district court granted Phillips' request for a 3-level reduction for acceptance of responsibility, see U.S.S.G. § 3E1.1 (a) & (b) (2001), over the objection of the Government. The adjusted total offense level of 31 produced a Sentencing Guideline range of 108 to 135 months' imprisonment. The Government pointed out and the district court acknowledged that Phillips' § 841 (a) violation involving "50 grams or more of a . . . substance which contains cocaine base" carried a mandatory statutory minimum term of 10 years' imprisonment,[5] see 21 U.S.C. § 841 (b) (1) (A) (iii), narrowing the applicable penalty range to between 120 and 135 months' incarceration. Though the district court observed that no legal basis existed to depart from this 10-year statutory minimum sentence, the district court nonetheless sua sponte departed downward by 60 months and orally sentenced Phillips to 60 months' imprisonment, 10 years' supervised release,

---

[4]The November 1, 2001 edition of the Sentencing Guidelines Manual was used in preparing the PSR in this case.

[5]A violation of 21 U.S.C. § 860, to which Phillips also pled guilty, statutorily mandates the imposition of a minimum sentence of 1 year in prison, "[e]xcept to the extent," as here, § 841 (b) "otherwise provide[s] . . . for a greater minimum sentence. . . ."

5

and a $100 mandatory special assessment. The Government objected to the downward departure and requested that the district court articulate for the record the specific basis for its sentencing determination. Citing Koon v. United States, 518 U.S. 81 (1996), and USSG § 5K2.0 in its written findings, the district court offered as justification for its downward departure the existence of mitigating factors not adequately taken into account by the Sentencing Guidelines.[6] The Government timely filed notice of appeal; Phillips timely filed notice of cross-appeal.

## DISCUSSION

On appeal, the Government challenges the district court's 60-month downward departure from the applicable 10-year statutory minimum sentence; Phillips argues in his cross-appeal that the district court erred in denying his motion to suppress the allegedly illegally obtained evidence and seeks reversal of his conviction or, alternatively, that his sentence be affirmed. We address these issues in the order the district court ruled upon them.

I.      Motion to Suppress

A.      Standard of review

In reviewing the denial of a motion to suppress, "we review the district court's factual findings for clear error, and its legal conclusions, including its ultimate conclusion as to the constitutionality of the law enforcement action, de novo.'" United States v. Reyes, 349 F.3d 219, 222 (5th Cir. 2003)

---

[6]The district court cited as mitigating factors not adequately taken into account by the Guidelines the following circumstances it deemed present in this case: (1) the officers had conducted an illegal warrantless search; (2) Phillips' delay in providing information to assist the prosecution was due to his pursuit of viable suppression issues; (3) a disparity existed in the guidelines' treatment of "crack" cocaine versus "powder" cocaine; (4) a disparity existed between Phillips's arrest and the failure to charge Phillips; (5) a disparity existed between Phillips's arrest and the Government's decision not to charge Davis; and (6) Phillips's post-arrest rehabilitation efforts.

6

(quoting United States v. Chavez, 281 F.3d 479, 483 (5th Cir. 2002)).  "Whether a defendant has standing to contest an allegedly illegal search is a question of law."  United States v. Ibarra, 948 F.2d 903, 906 (5th Cir. 1991) (citing United States v. Kye Soo Lee, 898 F.2d 1034, 1037 (5th Cir.1990)).  Moreover, we view the evidence  "in the light most favorable to the prevailing party," here, the Government.  Reyes, 349 F.3d at 222  (citing United States v. Jordan, 232 F.3d 447, 448 (5th Cir.2000)).

B.      Phillips' Fourth Amendment privacy interest in the Thompson property

In his cross-appeal, Phillips argues that the district court erred in denying his motion to suppress the evidence discovered in the shed located on the Thompson property, insisting that he has standing to contest the allegedly illegal search because he had a reasonable expectation of privacy in his friend's residence, including the backyard shed, based on the longstanding familial relationship between the Phillips and Thompson-Davis families.[7]  The Government counters that Phillips has no standing to contest the search because his privacy interest in the Thompson residence was not sufficient to give rise to Fourth Amendment protections.[8]  We agree with the Government.

---

[7]In his brief and at oral argument, Phillips also protests that the district court erroneously focused its analysis on the extent to which the defendant had the right to exclude others from the shed in determining that the defendant lacked a privacy interest that extended to that structure and thus lacked standing to challenge the constitutionality of the search (and subsequent seizure of the cocaine).  Even if we were to agree with Phillips, we nonetheless may affirm the district court on any basis supported by the record, which, as detailed below, in this case compels affirmance of the district court's evidentiary ruling.

[8]The Government also argues, as it did before the district court, that Thompson's voluntary consent to the search provides an alternative basis for the district court's denial of the suppression motion.  Because we agree with the district court's ultimate conclusion that Phillips had "no standing" to contest the allegedly illegal search on the facts presented, we need not address the voluntariness of Thompson's consent.

The gravaman of Phillips' argument is that he, and his entire family, are life-long friends of the Thompson-Davis family. Testimony at the suppression hearing revealed that Phillips and Davis were like brothers and the two families took trips together, threw parties together, and generally acted like one family. Although Phillips frequently had spent the night at the Thompson home in the past, he had not done so in the five or six months preceding the night in question. As for the shed, Phillips testified that as kids, he and Davis would sometimes go into the shed "when it was raining and stuff, . . . to listen to the radio." Thompson, however, testified that she had exclusive use of the shed, that she used the shed to store Christmas decorations, and that she had the only key to the shed, which she kept locked. Thompson also testified that others could not use, enter, or store anything in the shed without first obtaining her permission to do so, and that Phillips never obtained permission to use the shed for any purpose, let alone for the storage of cocaine. Finally, Thompson's testimony revealed that she had thought the shed contained only her own personal belongings and was wholly unaware that Phillips had stored cocaine in the shed until she was informed of that fact while on the witness stand.

Nonetheless, Phillips argues that the longstanding social and familial relationship between the Phillips and Thompson-Davis families suffices to establish his reasonable expectation of privacy in the Thompson shed. In support of this proposition, Phillips primarily relies upon Minnesota v. Olson, 495 U.S. 91, 96 (1990) (concluding that overnight guests may have a reasonable expectation of privacy in their host's home), and this Court's decision in United States v. Vega, 221 F.3d 789, 796 (5th Cir. 2000) (concluding that, in contrast to the lessee of a home, another individual who is not a lessee does not have a reasonable expectation of privacy in that same leased home where the non-lessee's presence in the home is commercial and he has no prior relationship with the lessee).

8

"Fourth Amendment rights are individually held and cannot be asserted solely by reference to a particular place;" rather, they may be enforced only by persons whose own protection under the Amendment has been violated. Vega, 221 F.3d at 797 (noting that "'the Fourth Amendment protects people, not places'" (quoting Katz v. United States, 389 U.S. 347, 351(1967)). Accordingly, Phillips "must demonstrate that he had an individual subjective and legitimate expectation of privacy" in the Thompson residence, including the Thompson shed, "in order to establish that his fourth amendment rights were violated." See id. As Phillips correctly points out, in Vega we stated that "[s]uch an interest can, however, be established in the residence of another." Id. at 798 (citing Olson, 495 U.S. at 110). More specifically, "[w]e will recognize and protect an expectation of privacy in the home of another when it is based on a visit which represents 'a longstanding social custom that serves functions recognized as valuable by society.'" Id.

As the Government correctly points out, however, on the particular facts of this case, Olson and its progeny do not compel the conclusion that Phillips had a reasonable expectation of privacy in the Thompson shed. In Vega, we observed that the Supreme Court has recognized that "the overnight guest 'typif[ies] those who may claim the protection of the Fourth Amendment in the home of another.'" 221 F.3d at 798 (quoting Minnesota v. Carter, 525 U.S. 83, 91 (1998)). By contrast, "[a]t the other end of the spectrum, one merely 'legitimately on the premises' represents the typical individual who may not claim such protection." Id. In Carter, the Supreme Court concluded on the facts presented that two defendants who were in the apartment of another solely for the purpose of bagging cocaine fell in the latter category, and thus had no reasonable expectation of privacy in that apartment. 525 U.S. at 91. The Supreme Court reasoned that the visit was primarily commercial and not social, noting the lack of a prior relationship between the defendants and the lessee of the

9

apartment, the brevity of the visit, and the fact that, as to the defendants, the apartment was "simply a place to do business." Id. at 90. Applying Carter in Vega, we concluded that an individual had no reasonable expectation of privacy in the leased home of another where he adduced no evidence that his presence in the home was anything other than commercial (in that case, the distribution of marihuana), "nor did he show that he had ever been to the residence before the day of the raid or that he had any sort of relationship with [the lessee]" prior to the day of the search and seizure." Vega, 221 F.3d at 797 (citing Carter, 525 U.S. at 90-91).

In this case, as in Carter and Vega, there is no record evidence that shows that Phillips utilized the shed for anything other than a commercial purpose -- the storage of cocaine for later distribution -- on the evening in question. Although, as Phillips correctly points out, Olson does not require that he be an "overnight" guest of the Thompsons' in order to establish a legitimate privacy interest in the Thompson residence, its yard, and the shed, we find that his attempt to distinguish the results reached in Carter and Vega on the basis of his longstanding familial relationship with the Thompson-Davis family is unpersuasive under the circumstances presented in this case. Olson stands for the proposition "that any guest, in appropriate circumstances, may have a legitimate expectation of privacy when he is there 'with the permission of his host, who is willing to share his house and his privacy with his guest.'" United States v. Fields, 113 F.3d 313, 321 (2d Cir. 1997) (quoting Olson, 495 U.S. at 99). As noted above, Thompson testified that she alone had exclusive control of the shed, kept the shed locked and had the only key, and had never given Phillips or anyone else permission to use, enter, or store anything in the shed for any purpose. When Philips attempted to stash the bag of cocaine in the shed, he did not simply open the shed to access the interior but instead had to lift up the tin roof and drop it inside. Thompson testified that she was not aware that the shed

10

could be accessed in this manner. Thus, even assuming that Phillips could establish that he had a reasonable privacy interest in the Thompson residence based on his prior relationship with the owner despite the fact that he was not a guest on the evening in question, Phillips has not shown that he was using the shed with the permission of Thompson or that Thompson "was willing to share her privacy [interest in the shed]" with the defendant. See Olson, 495 U.S. at 99. Rather, the circumstances presented are more akin to those described in Rakas v. Illinois, 439 U.S. 128, 143 n. 12 (1978), in which the Supreme Court stated:

> a "legitimate" expectation of privacy by definition means more than a subjective expectation of not being discovered. A burglar plying his trade in a summer cabin during the off season may have a thoroughly justified subjective expectation of privacy, but it is not one which the law recognizes as "legitimate." His presence ... is "wrongful"; his expectation is not "one that society is prepared to recognize as reasonable."

439 U.S. 128, 143 n. 12. In Vega, we clarified that in this example, "the burglar's expectation of privacy loses its legitimacy not because of the wrongfulness of his activity, but because of the wrongfulness of his presence in the place where he purports to have an expectation of privacy." 221 F.3d at 797 (citing Rakas, 439 U.S. at 143 n. 12). Applying this principle here, we conclude that Phillips cannot show that he was legitimately in the Thompson yard because Thompson never gave him permission to use the shed; as to the shed, Phillips' presence was wrongful. See Vega, 221 F.3d at 797. We therefore are unpersuaded that the district court committed any reversible error in denying Phillips' motion to suppress.

II.     Sentencing calculation

We next address the Government's argument that the district court erred as a matter of law when it departed below the otherwise applicable 10-year mandatory statutory minimum sentence of

11

imprisonment based on the existence of mitigating factors not adequately taken into account by the Sentencing Guidelines.

A.      Standard of review

This Court reviews de novo the question whether the district court's departure from the applicable Sentencing Guideline range was "based on a factor that . . . (ii) is not authorized under section 3553 (b); or (iii) is not justified by the facts of the case." 18 U.S.C. § 3742 (e) (3) (B) (ii)-(iii); see United States v. Bell, 371 F.3d 239, 242 (5th Cir. 2004).[9]  A district court's legal interpretation of the Sentencing Guidelines, including its determination of whether the Guidelines authorize its departure below a relevant statutory minimum sentence, is likewise subject to our plenary review.  See United States v. Lopez, 264 F.3d 527, 529 (5th Cir. 2001) (citing United States v. Rodriguez, 60 F.3d 193, 195 (5th Cir.1995)).

B.      The propriety of the downward departure from the statutory minimum sentence

The district court sentenced Phillips to, inter alia, a term of imprisonment of 60 months. Pursuant to § 841(b) (1) (A), a person who commits a violation of  § 841 (a) involving  "50 grams or more of a . . . substance which contains cocaine base," 21 U.S.C. § 841(b) (1) (A) (iii), "shall be sentenced to a term of imprisonment which may not be less than 10 years. . . ." Id. § 841(b) (1) (A) (emphasis added).  Phillips pled guilty to possession with intent to distribute cocaine base, in violation of § 841(a)(1), and further admitted in his plea that he was accountable for at least 50 grams of that narcotic.  As noted above, the district court acknowledged that Phillips was responsible for a quantity

_____

[9] In Bell, we held in part that the standard of review set forth in Section 3742 (e) of  the Prosecutorial Remedies and Other Tools to end the Exploitation of Children Today Act of 2003 ("Protect Act"), Pub.L. 108-21, 117 Stat. 650 (2003),.applies retroactively in cases such as the instant one in which the defendant's sentencing and the filing of notice of appeal occurred prior to the Protect Act's April 30, 2003, effective date.  See Bell, 371 F.3d at 242.

of cocaine in excess of the 50 grams required to trigger the 10-year statutory minimum sentence and that no legal basis existed for a downward departure, yet refused to impose that sentence, citing USSG § 5K2.0 and Koon, 518 U.S. at 106-09.  The Government argues that 18 U.S.C. § 3553 (b) and its corresponding Guideline § 5K2.0 do not authorize a departure from a statutory minimum sentence and that any such deviation can be had only through the explicit procedures set forth in 18 U.S.C. § 3553 (e) and § 3553 (f), neither of which, according to the Government, applies in this case. We agree.

Generally, a district court must impose a sentence in accordance with the ranges prescribed by the Sentencing Guidelines for the relevant offense conduct.  See 18 U.S.C. § 3553 (a) (4) (A). A district court may, however, deviate from the applicable Guidelines range where "there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines. . . ."  18 U.S.C. § 3553 (b); USSG § 5K2.0.  Although § 5K2.0 explicitly refers only to departures from the Guidelines, using such phrase no less than eight times, Phillips first contends that this provision, as interpreted by the Supreme Court in Koon, 518 U.S. at 106-09, also authorized the district court to depart downward from the minimum statutory sentence mandated for the crime of which he was convicted.  This argument is unavailing.

"Federal law explicitly cabins the district court's discretion in departing downward . . . from a statutory minimum" sentence.  United States v Alvarez, 51 F.3d 36, 39 (5th Cir.1995).  Contrary to Phillips' assertion, Koon "explore[d] the appropriate standards of appellate review of a district court's decision to depart from the Guidelines," 518 U.S. at 85 (emphasis added), and did not address cases where, as here, Congress has limited the discretion of the sentencing court by requiring the

13

imposition of a specific sentence.  See 21 U.S.C. § 841(b) (1) (A); USSG § 5G1.1(b); United States v. Medley, 313 F.3d 745, 749-50 (2d Cir. 2002).  Indeed, the plain language of the Sentencing Guidelines appears to foreclose the exercise of Koon discretion to depart below a statutory minimum by making clear that "[w]here a statutorily required minimum sentence is greater than the maximum of the applicable guideline range, the statutorily required minimum sentence shall be the guideline sentence." See USSG. § 5G1.1 (b).  Moreover, as we have previously indicated, USSG § 5K2.0, "in and of itself," does not permit the district court to depart below an applicable mandatory statutory minimum sentence.  United States v. Lopez, 264 F.3d 527, 531 (5th Cir. 2001) (citing United States v. Duncan, 242 F.3d 940, 949 (10th Cir.2001) (explaining that a district court "lacks the authority to lower a mandatory minimum sentence via section 5K2.0 of the Guidelines")); accord, United States v. Brigham, 977 F.2d 317, 320 (7th Cir.1992) (holding that Section 5K2.0, which "describes appropriate departures *from the guidelines*," does not provide a basis for "a departure from a minimum sentence prescribed by statute");  cf. United States v. Solis, 169 F.3d 224, 226-27 (5th Cir.1999) (concluding that neither the safety-valve provisions in § 5K1.1 nor § 5K2.0 affords a district court "any additional authority to consider [a § 3553(e)] substantial assistance departure [from a statutory minimum sentence] in the absence of a Government motion").  Rather, the district court's ability to depart downward from an otherwise applicable statutory minimum is limited to the circumstances explicitly set forth in 18 U.S.C. § 3553 (e) and § 3553 (f).  See Alvarez, 51 F.3d at 38-39.

Though this Court has yet to rule expressly on whether these two subsections of § 3553 represent the exclusive routes to depart below the statutory minimum, we now join all other circuits which have addressed this issue in concluding that they are.  See, e.g., Medley, 313 F.3d at 749-50

14

(Second Circuit); United States v. Santiago, 201 F.3d 185, 187-88 (3d Cir.1999); United States v. Burke, 237 F.3d 741, 743-44 (6th Cir.), cert. denied, 532 U.S. 1072 (2001); United States v. Haynes, 216 F.3d 789, 799-800 (9th Cir.2000); United States v. Duncan, 242 F.3d 940, 949 (10th Cir. 2001); United States v. Clark, 274 F.3d 1325, 1328 (11th Cir. 2001). The Seventh and Eighth Circuits have issued similar opinions. See Brigham, 977 F.2d at 320 (Seventh Circuit); United States v. Polanco, 53 F.3d 893 (8th Cir.1995). Accordingly, a district court may impose a sentence of imprisonment below a statutory minimum for a drug crime only if: (1) the Government makes a motion pursuant to 18 U.S.C. § 3553 (e) asserting the defendant's substantial assistance to the Government; or (2) the defendant meets the "safety valve" criteria set forth in 18 U.S.C. § 3553 (f).

In this case, Phillips does not dispute that § 3553 (e) could not have provided a basis for the district court's departure because the Government did not file a substantial-assistance motion pursuant to that subsection and Phillips has not challenged the constitutionality of the Government's failure to so move. See Solis, 169 F.3d at 226-27; Medley, 313 F.3d at 749-50 (noting that "[a]bsent such a motion, the sentencing court could not invoke § 3553 (e) to depart from the minimum sentence prescribed by statute"). Phillips, however, protests that his § 860 violation (the commission of his drug offense within 1,000 feet of a school) is eligible for § 5C1.2 safety-valve treatment under § 3553 (f), asserting that although his offense, a violation of § 860, is not enumerated in § 3553 (f), section 860 is merely a "sentence enhancement" and § 841, which is enumerated, is a lesser included offense. Phillips also argues that the rule of lenity requires allowing the safety valve provision to apply to his § 860 offense.

Under § 3553 (f), a district court may sentence a defendant below a statutory minimum if the defendant meets five mandatory criteria. In addition to these criteria, application of § 3553 (f)'s

15

safety valve is explicitly limited to the following offenses: 21 U.S.C. §§ 841, 844, 846, 960, and 963. Conspicuously absent from this list is § 860, the offense for which Phillips was convicted. This Court has yet to address whether a § 860 offense is nonetheless eligible for safety-valve treatment. However, all other circuits which have addressed this question have concluded that the safety-valve provisions do not apply to a § 860 offense. See, e.g., United States v. Kakatin, 214 F.3d 1049, 1050-52 (9th Cir. 2000) (noting that "[w]ith this opinion, we join the Third and Eleventh Circuits in holding that the safety valve provision of . . . § 3553 (f) does not apply to convictions under 21 U.S.C. § 860"); United States v. Koons, 300 F.3d 985, 993 (8th Cir. 2000); United States v. Anderson, 200 F.3d 1344, 1346-48 (11th Cir. 2000) (reasoning that the "[t]he selection of these five [enumerated] statutes reflects a [Congressional] intent to exclude others, including 21 U.S.C. § 860"); United States v. McQuilken, 78 F.3d 105, 107-09 (3d Cir. 1996) (same). Indeed, in Kakatin, the Ninth Circuit expressly rejected the defendant's lesser-included offense, sentencing enhancement, and rule of lenity arguments -- the very same arguments that Phillips advances in this case. See 214 F.3d at 1051. Specifically, the Kakatin Court concluded that "Congress could reasonably have intended" that the safety valve apply to § 841 offenses but not to § 860 offenses precisely "[b]ecause § 841 is a *lesser*-included offense; consequently, "a § 860 conviction is a greater or more serious offense" deserving of a commensurately more serious punishment. 214 F.3d at 1051; cf. United States v. Chandler, 125 F.3d 892, 896 (5th Cir.1997) (holding that Congress intended that § 841 and § 860 be separate substantive offenses). The Ninth Circuit further concluded that the doctrine of lenity had no application given that it "is clear that § 841 and § 860 are separate substantive offenses," and that there is no "'ambiguity concerning the ambit of' § 3553(f)." Kakatin, 214 F.3d at 1051. We are

persuaded by the reasoning of these courts and likewise conclude that § 860 offenses are not eligible for safety valve treatment pursuant to § 3553 (f).

In sum, we find that the plain language of the relevant statutory and sentencing provisions and the jurisprudence of this Court and other circuits compels the conclusion that § 5K2.0 does not provide a basis for departure from a statutory minimum sentence. Accordingly, in the absence of one of the exceptions set forth in § 3553 (e) or § 3553 (f), "or such other exceptions as Congress may create," the district court may not downwardly depart from a term of imprisonment or other penalty below the minimum mandated by the statute pursuant to which the defendant was convicted. Because neither of the two recognized exceptions applied on the facts presented in this case, we conclude that the district court lacked authority to impose a sentence less than the statutory mandatory minimum. See, e.g., Medley, 313 F.3d at 750 (citing Haynes, 216 F.3d at 799-800). This matter must therefore be remanded for resentencing on Count 2.

### CONCLUSION

For the foregoing reasons, we AFFIRM the district court's order denying Phillips' motion to suppress evidence allegedly illegally obtained from the Thompson shed, AFFIRM Phillips conviction, but REVERSE the district court's sentencing determination, VACATE Phillips' sentence, and REMAND for resentencing in accordance with this opinion.

AFFIRMED in part, REVERSED in part, VACATED in part, and REMANDED.