United States Court of Appeals
Fifth Circuit

**F I L E D**

**November 14, 2006**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

No. 06-40494
Summary Calendar

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

FRANK WILLIAM WINEINGER, II,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Eastern District of Texas
Case No. 4:05-CR-10

_____

Before JONES, Chief Judge, and HIGGINBOTHAM and SMITH, Circuit
Judges.

PER CURIAM:[*]

In this appeal from conviction for several narcotics- and

firearm-related offenses, Defendant-Appellant, Frank Wineinger

claims: (1) the district court improperly failed to suppress

evidence obtained during the course of a search; (2) insufficiency

of the evidence to sustain a conviction on Count Five of the

indictment; (3) error in failure to sever Count Five of the

indictment; (4) error in admission of evidence in support of Count

---

[*]Pursuant to 5TH CIR. R. 47.5, the court has determined that
this opinion should not be published and is not precedent except
under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

Five of the indictment; (5) error in overruling his <u>Batson</u> challenge. We analyze each of these claims in turn.

Frank Wineinger was arrested on March 5, 2003, by the Sherman, Texas, Police Department pursuant to an outstanding felony warrant. A search incident to arrest uncovered a loaded Dan Wesson .357 Magnum revolver tucked in his waistband, a small amount of methamphetamine, $567.00 in cash, and a "user's kit" containing drug paraphernalia in his pockets.

After being taken into custody, Wineinger waived his rights and confessed to selling and using narcotics. He told Officer Jeffcoat, who conducted the interrogation, that he had been using methamphetamine for the past six months. He also stated that the residence he shared with his girlfriend (now wife), Kimberly Hall, at 2902 Ray Drive in Denison, contained two additional firearms and more drug paraphernalia. Based on his admissions, narcotics investigators obtained a search warrant. Upon a search of the Ray Drive house, officers discovered marijuana, drug paraphernalia (including plastic bags containing methamphetamine residue, pipes, and bongs), three firearms (including the .45 AMT semi-automatic pistol described in Count Five[2] of the superseding indictment), paint thinner, hydrogen peroxide, red phosphorus,

---

[2]Count Five alleges violation of 18 U.S.C. § 922(g)(3), possession of a firearm by an unlawful user of a controlled substance, and states in pertinent part that "[o]n or about March 5, 2003...FRANK WILLIAM WINEINGER, II, then being an unlawful user of a controlled substance...knowingly possessed...a firearm, to-wit: a AMT, Model Hardball, .45 caliber, semi-automatic pistol, Serial Number A05703...."

pseudoephedrine tablets, and other precursor materials typically used in the production of methamphetamine. Photographs of these items were introduced at trial over Wineinger's objection.

On September 20, 2003, Sergeant Mike Stephens received a tip that Wineinger was in possession of stolen firearms and methamphetamine at 2601B Hickory Street, in Sherman, and that he was armed and had been taking methamphetamine. Based on this information and his discovery that Wineinger had eight outstanding felony warrants, Sergeant Stephens and three other law enforcement officials drove to the residence to apprehend Wineinger.

Upon arrival, the officers were told by Kim Parker, who occupied the house with her boyfriend Ray Sinor, that Wineinger was inside and was somewhere in the back of the residence. The officers proceeded to enter the house and systematically sweep the rooms, during the course of which they observed several guns and gun cases strewn around the living room floor.

Officers discovered Wineinger hiding in a bedroom closet at the rear of the residence. After extricating him, they found a stolen 9mm pistol inside of a Crown Royal whisky bag on the ground near where Wineinger had concealed himself, and a loaded revolver secured in a holster on his left hip. After removing him from the residence, officers obtained the written consent of Parker and Sinor to search the house. In the course of the search they discovered the guns, gun cases, five small plastic bags containing methamphetamine, and a black film canister containing marijuana.

3

Kimberly Parker testified at trial that prior to the officers' arrival, Wineinger entered the house, dumped the firearms behind the sofa and sat down at the living room table where he proceeded to bag methamphetamine.

Wineinger was indicted on four firearm and narcotics counts, arising out of the September 20, 2003, incident. In a superseding indictment, he was charged with a fifth count, alleging possession of a firearm by an unlawful drug user, arising out of the March, 5, 2003, arrest. Wineinger pled guilty to two counts and was convicted after trial on the other three. He was sentenced to 73 months' imprisonment. He appeals his conviction.

## I. DISCUSSION

The factual findings on the motion to suppress evidence are examined for clear error, while questions of law and the overall Fourth Amendment reasonableness of the search are reviewed de novo. United States v. Braithwaite, 458 F.3d 376, 379-80 (5th Cir. 2006). Facts supporting a suppression determination are viewed in the light most favorable to the prevailing party, here, the United States. United States v. Hunt, 253 F.3d 227, 230 (5th Cir. 2001).

As a threshold matter, Wineinger lacks standing to contest the legality of the search unless he can establish that he enjoyed a "legitimate expectation of privacy" in the Parker residence at the time of his arrest. United States v. Ibarra,

4

948 F.2d 903, 905 (5th Cir. 1991) (citing Rakas v. Illinois, 439 U.S. 128, 134, 99 S. Ct. 421, 430 (1978)). "Fourth Amendment rights are personal and cannot be vicariously asserted." United States v. Mendoza-Burciaga, 981 F.2d 192, 196 (5th Cir. 1993). Our determination of this question depends on whether Wineinger can establish an actual, subjective expectation of privacy in the place searched or evidence seized, and whether that expectation of privacy is one society would recognize as reasonable.

Wineinger first challenges the district court's denial of his motion to suppress evidence found during the September 20 arrest. He contends that because he was a guest in Kimberly Parker's home at the time of his arrest and had visited on several prior occasions, he has demonstrated a legitimate expectation of privacy under Minnesota v. Olsen, 495 U.S. 91, 110 S. Ct. 1684 (1990). It is clear, however, that Olsen stands for the proposition that not merely any temporary visitor, but only overnight social guests, may under certain circumstances be entitled to Fourth Amendment standing to challenge a search when present in another's home. United States v. Phillips, 382 F.3d 489, 495 (5th Cir. 2004). Wineigner's claim is nothing short of extravagant when considered against the backdrop of the Supreme Court's desire in Olsen to "recognize and protect an expectation of privacy in the home of another when it is based on a visit which represents a longstanding social custom that serves functions recognized as valuable by society." United States v. Phillips,

382 F.3d 489, 495 (5th Cir. 2004) (citing Olsen, 495 U.S. at 91, 110 S. Ct. at 1684).

Wineinger next asserts that the discrepancy between the description of the firearm alleged in Count Five of the superseding indictment and the firearm that the jury convicted him of possessing constitutes a fatal variance and requires reversal of the district court judgment. We disagree.

We review any variance between charges alleged in the indictment and evidence produced at trial for harmless error. United States v. Freeman, 434 F.3d 369, 374-75 (5th Cir. 2005). A constructive amendment to an indictment is reversible per se and occurs "when the jury is permitted to convict the defendant on a factual basis that effectively modifies an essential element of the offense charged." United States v. Millet, 123 F.3d 268, 272 (5th Cir. 1997), cert. denied, 523 U.S. 1023, 118 S. Ct. 1306 (1998). However, not all inconsistencies between the indictment and the evidence produced in support of crimes for which a defendant is ultimately convicted amount to reversible error. In such cases, "convictions generally have been sustained as long as the proof upon which they are based corresponds to an offense that was clearly set out in the indictment." United States v. Hamilton, 992 F.2d 1126, 1130 (10th Cir. 1993) (quoting United States v. Miller, 471 U.S. 130, 136, 105 S.Ct. 1811, 1814 (1985)).

There is no fatal variance between the government's proof adduced at trial and the terms of the superseding indictment.

6

Count Five, alleging possession of a firearm by an unlawful user of a controlled substance in violation of 18 U.S.C. § 922(g)(3), states that on or about March 5, 2003, Wineinger "knowingly possessed...a firearm, to-wit: a AMT, Model Hardball, .45 caliber, semi-automatic pistol, Serial Number A05703." At the time of his arrest Wineinger possessed on his person only a .357 Magnum revolver, not the .45 caliber AMT, which was later discovered along with two other firearms at the residence he shared with Kimberly Hall. Wineinger argues that because there is insufficient evidence to prove that he possessed the .45 caliber AMT recovered from his house, the government cannot depend on that weapon to substantiate proof of violating § 922(g)(3) under Count Five.

This court has previously held that a discrepancy between the specific model of firearm alleged in a complaint and the evidence adduced at trial to prove possession under § 922(g) is not a fatal variance requiring a conviction to be vacated. Guidry, 406 F.3d at 322 (rejecting fatal variance argument based on indictment charging defendant with possession of a "9mm Kurz" while trial evidence indicated possession of a ".380-caliber pistol"); United States v. Munoz 150 F.3d 401, 417 (5th Cir. 1998) (stating that evidence at trial proving possession of a 20-gauge sawed-off shotgun was not fatally at variance with an indictment charging possession of a 12-gauge shotgun). In any event, there was ample evidence for the jury to conclude that Wineinger possessed both the .45 and .357 caliber weapons. Wineinger admitted to Officer

7

Jeffcoat after his arrest that in addition to the .357 revolver, two other weapons, including the .45 caliber AMT, were kept at this residence.  Wineinger testified at trial that he had access to the AMT and had handled it on previous occasions.  As a result, the jury could have reasonably concluded that Wineinger was in possession of the .45 caliber AMT on March 5, 2003.  The fact that the AMT was recovered at Wineinger's residence, and not at the scene of his arrest, is irrelevant to the question of whether he possessed a firearm within the meaning of § 922(g)(3).  The discrepancy between the indictment and trial proof was irrelevant to the question of possession and was harmless.

Wineinger argues that the district court's refusal to sever Count Five prejudiced him in violation of FED. R. CRIM. P. 14. We review the denial of a severance motion for abuse of discretion. United States v. Pena-Rodriquez, 110 F.3d 1120, 1128 (5th Cir. 1997).  To satisfy this standard, "the defendant bears the burden of showing specific and compelling prejudice that resulted in an unfair trial."  Id. (internal quotations omitted).

FED. R. CRIM. P. 8(a) permits joinder of offenses in a single indictment if the offenses charged "are of the same or similar character...or are connected with or constitute parts of a common plan or scheme."  Wineinger stipulated that he had been a drug user since 2000 and his criminal history indicates a pattern of drug use.  On both March 5 and September 20, 2005 (the dates giving rise to Count 5 and Counts 2 and 4, respectively), Wineinger

8

was apprehended by police in possession of methamphetamine and was concealing a loaded firearm in his waistband. Wineinger has failed to demonstrate that the government's theory that he was in possession of the firearms to promote methamphetamine trafficking was prejudicial. That the evidence produced in support of Count Five served to incriminate him further was a fact that did not require the district court to sever Count Five from Counts Two and Four under Rule 14. The court did not abuse its discretion. See United States v. Chagra, 754 F.2d 1186, 1189 (5th Cir. 1985).

Wineinger next contends that the district court violated FED. R. EVID. 404(b) by admitting evidence that he possessed marijuana, drug paraphernalia, and articles commonly used in methamphetamine production in support of Count Five. We review rulings on admissibility of evidence for abuse of discretion. United States v. Royal, 972 F.2d 643, 645 (5th Cir. 1991).

In this case, it matters not whether the admission of the evidence was either intrinsic or extrinsic to the crime charged. United States v. Williams, 900 F.2d 823, 825 (5th 1990) (internal quotations omitted). Evidence is intrinsic when it is "inextricably intertwined" with the crime charged, or if both acts constitute a "single criminal episode" or are "necessary preliminaries" to the crime charged. Id.

The evidence offered in support of Count Five is indistinguishable from other proof that Wineinger possessed firearms to both facilitate and protect his narcotics distribution,

9

and it was necessary to prove he was an unlawful <u>user</u> of drugs in possession of a firearm.  The district court adequately balanced the materiality of the evidence against its prejudicial impact and did not err in admitting it.

Wineinger's final contention is that the government's use of peremptory strikes to remove two prospective black jurors violated <u>Batson v. Kentucky</u>, 476 U.S. 79, 106 S. Ct. 1712 (1986). The government offered race-neutral explanations for each strike. One possible juror was related to a federal prisoner, while the other one, a homemaker, did not fit the government's goal of seating professionals who could better understand technical evidence.  Wineinger offers no basis on which to second-guess the district court's decision that these explanations were credible as well as race-neutral.

For the foregoing reasons, we AFFIRM the judgment of the district court.

**AFFIRMED.**