# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

December 2, 2020

Lyle W. Cayce
Clerk

No. 18-60603

Gregory Paul Carr,

*Plaintiff—Appellant*,

*versus*

Lloyd Hoover, *Officer*,

*Defendant—Appellee*.

Appeal from the United States District Court
for the Northern District of Mississippi
USDC No. 4:16-CV-88

Before Owen, *Chief Judge*, and King and Engelhardt, *Circuit Judges*.

Per Curiam:*

Gregory Paul Carr, a Mississippi prisoner appearing *pro se*, sued Officer Lloyd Hoover pursuant to 42 U.S.C. § 1983. According to Carr, Officer Hoover arrested him without a warrant or probable cause, in violation of the Fourth Amendment. The district court granted summary judgment in Officer Hoover's favor, finding no constitutional violation and, in any case,

---

* Pursuant to 5th Circuit Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Circuit Rule 47.5.4.

No. 18-60603

that Officer Hoover was entitled to qualified immunity. For the reasons that follow, we AFFIRM.

## I.

At approximately 4:46 a.m., on July 31, 2014, defendant-appellee Officer Lloyd Hoover arrived on the 400 block of Sunflower Lane in Greenville, Mississippi. Officer Hoover was dispatched there, he claims, in response to a brief 911 call from an unknown woman. As he arrived on Sunflower Lane, Officer Hoover states that he heard a woman's cries coming from house number 463. Officer Hoover knocked on the door and announced himself as a police officer. Once someone opened the door, Officer Hoover directed two men and four women out of the house and onto the ground.

After spotting a truck on the driveway, Officer Hoover walked off the porch, away from the house, and toward the vehicle. On the truck's console, he spotted seven boxes of Sudafed in plain view. Certain types of Sudafed contain pseudoephedrine as their active ingredient, and state law limits the number of products containing pseudoephedrine that a person can legally possess.[1] Other types of Sudafed contain phenylephrine and are not illegal to possess in large quantities.

Believing the seven boxes of Sudafed he spotted contained pseudoephedrine, and having identified plaintiff-appellant Gregory Paul Carr as the truck's owner, Officer Hoover placed Carr under arrest (the "Sudafed Arrest"). Carr was transported to the Greenville Police Department, where he was booked and jailed on, *inter alia*, charges of possession of a controlled substance. Carr was never convicted on these charges, and it was later discovered that the Sudafed in Carr's truck contained phenylephrine and not

---

[1] Pseudoephedrine is a chemical used to manufacture crystal methamphetamine. *See* MISS. CODE. ANN. § 41-29-313 (c) (West 2018).

No. 18-60603

pseudoephedrine, the precursor to crystal methamphetamine. The lawfulness of the Sudafed Arrest is the focus of this appeal.

Carr did plead guilty to a subsequent burglary charge,[2] a crime for which he is now in prison. While in prison, serving time for the burglary, Carr filed this suit in federal district court under 42 U.S.C. § 1983 challenging only the constitutionality of the Sudafed Arrest.

## II.

We review the district court's grant of summary judgment *de novo*, applying the same standards as the district court. *Mason v. Lafayette City-Par.*

---

[2] To be clear, the burglary is not wholly unrelated to the Sudafed Arrest. Specifically, an inventory search of Carr's truck, carried out as a consequence of the Sudafed Arrest, revealed tools that were later linked to the burglary for which Carr is now in prison. A finding that the Sudafed Arrest was unlawful, therefore, might render the tools' discovery unlawful. *See Utah v. Strieff*, 136 S. Ct. 2056, 2061 (2016). But approximately thirty minutes before Carr was booked into the jail on Officer Hoover's charges, different officers were independently called to the scene of the burglary; they watched a surveillance video of Carr, whom they recognized, breaking into vehicles and stealing tools. So, along with the tools, the burglary conviction was supported by color video evidence of the crime, an independent identification of Carr as the suspect, a confession from his accomplice, and more. As noted, Carr pleaded guilty to the burglary and is now in prison. We are mindful that "[when a prisoner] seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence." *See Heck v. Humphrey*, 512 U.S. 477, 479 (1994). The district court concluded *Heck* had "no bearing on the instant case." Officer Hoover does not argue on appeal that *Heck* is a bar because of this suit's potential consequences on the burglary conviction's validity. We agree with the district court. Even if the tools were unlawfully discovered, this conclusion would not "necessarily imply that [Carr's burglary] conviction was unlawful." *See Heck*, 512 U.S. at 487 n.7 ("Because of . . . harmless error. . . [s]uch a § 1983 action . . . would not necessarily imply that the plaintiff's conviction was unlawful."); *see also Brown v. Sudduth*, 255 F. App'x 803, 806 (5th Cir. 2007) (collecting published authority from the Fifth Circuit and sister circuits standing for the proposition that "because a valid conviction may follow an illegal arrest, a successful § 1983 unlawful arrest action does not necessarily imply the invalidity of an underlying conviction"). Because the tools and the burglary are of no further relevance to the disposition of this appeal, we make no mention of them below.

No. 18-60603

*Consol. Gov't*, 806 F.3d 268, 274 (5th Cir. 2015). Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id.* (quoting FED. R. CIV. P. 56). "We are not limited to the district court's reasons for its grant of summary judgment." *Lincoln v. Scott*, 887 F.3d 190, 195 (5th Cir. 2018).

Section 1983 provides a federal cause of action against "[e]very person" who under color of law causes "the deprivation of any rights . . . secured by the Constitution." And, under the Fourth Amendment, "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated[.]" U.S. CONST. amend. IV.

Before the district court, Carr challenged Officer Hoover's conduct as unconstitutional. The district court granted summary judgment in Officer Hoover's favor.

## III.

On appeal, in connection only with the Sudafed Arrest, Carr argues that: (1) Officer Hoover violated his Fourth Amendment rights in effectuating a warrantless search and seizure; and (2) Officer Hoover is not entitled to qualified immunity. We consider—and reject—Carr's contentions below.

### a) Sudafed Arrest

As we have already recounted, having seen the seven boxes of Sudafed in the truck and identified Carr as the truck's owner, Officer Hoover placed Carr under arrest for possession of a controlled substance.[3] We address first

---

[3] Once Officer Hoover told Carr he would be placed under arrest, Carr allegedly became belligerent and resisted, and was therefore also charged with disturbing the peace.

whether Officer Hoover's discovery of the Sudafed was lawful, and next whether the Sudafed provided probable cause to effectuate the arrest. We conclude that both the discovery and the arrest were constitutional.

### i.    *Lawful Discovery*

To begin, Carr's *pro se* arguments amount to an assertion that the discovery of the Sudafed was unlawful because, by walking onto the property at 463 Sunflower Lane and looking into Carr's truck, Officer Hoover violated Carr's Fourth Amendment interest in (1) the home and its constitutionally protected area—the curtilage—and (2) his truck.

We start by addressing whether Officer Hoover invaded Carr's Fourth Amendment interest in the home and its curtilage. If Officer Hoover unlawfully entered 463 Sunflower Lane's premises, then any evidence discovered as a result of his intrusion would be excluded. *See Murray v. United States*, 487 U.S. 533, 536 (1988)(noting that the introduction into evidence of tangible materials seized during an unlawful search is excluded).

It is well established that "Fourth Amendment rights are individually held and cannot be asserted solely by reference to a particular place; rather, they may be enforced only by persons whose own protection under the Amendment has been violated." *United States v. Phillips*, 382 F.3d 489, 495 (5th Cir. 2004). So, to challenge any intrusion on Officer Hoover's part as an invasion of Carr's own interest in 463 Sunflower Lane, Carr must have a reasonable expectation of privacy in this particular home. To be sure, Carr's truck was parked on 463 Sunflower Lane's driveway. And in some instances, a home's driveway may be part of the home's curtilage. *See, United States v.*

---

Because Officer Hoover smelled alcohol on Carr's breath, Carr was arrested on charges of public drunkenness, too. We omit mention of these charges as Officer Hoover only needed probable cause for "any crime" to arrest Carr lawfully. *See Allen v. Cisneros*, 815 F.3d 239, 246 (5th Cir. 2016).

*Holley*, 831 F.3d 322, 335 n.4 (5th Cir. 2016) (Graves, J., dissenting) (noting that precedent has not "announce[d] a broad rule that a driveway is not part of a home's curtilage").

But even if we assume, *arguendo*, that the driveway in this case is protected curtilage, Carr would have no reasonable expectation of privacy in it because he was merely a temporary guest at 463 Sunflower Lane. *See Collins v. Virginia*, 138 S. Ct. 1663, 1674 (2018) (citing *Pennsylvania v. Labron*, 518 U.S. 938, 939-40 (1996) (noting that in *Labron*, the Court upheld a warrantless search of a truck parked in a driveway, in part, because "[u]nlike in [*Collins*], there was no indication that the individual who owned the truck in *Labron* had any Fourth Amendment interest in the farmhouse or its driveway").

It is undisputed that Carr had been inside 463 Sunflower Lane for only a few minutes; he did not know the other people there; he does not own the home; and he does not know who does. He was not a guest who "typif[ies] those who may claim the protection of the Fourth Amendment." *See Phillips*, 382 F.3d at 496 (quoting *United States v. Vega*, 221 F.3d 789, 797 (5th Cir. 2000) (noting, *inter alia*, the lack of a prior relationship between the defendants and the lessee of the apartment, and the brevity of the visit)). Therefore, Carr's status as a temporary guest did not vest him with any reasonable expectation of privacy in this particular home or its curtilage. *Cf. Minnesota v. Carter*, 525 U.S. 83, 88 (1998) (concluding that because respondents had no legitimate expectation of privacy in the apartment, whether the police officer's observation constituted a search was irrelevant); *United States v. Wineinger*, 208 F. App'x 286, 289 (5th Cir. 2006) (finding that a temporary guest lacked reasonable expectation of privacy). Without a reasonable expectation of privacy in this particular home's curtilage, Carr may not challenge Officer Hoover's entry as a violation of his own Fourth Amendment rights.

Further, any contention that Officer Hoover intruded on Carr's Fourth Amendment interest in the truck also fails, because Officer Hoover's conduct did not constitute a search of Carr's truck. On this record, it is clear that Officer Hoover merely walked next to the truck and looked inside—he did not conduct a search, under the meaning of the Fourth Amendment, at all. *See Arizona v. Hicks*, 480 U.S. 321, 328 (1987) ("[A] truly cursory inspection—one that involves merely looking at what is already exposed to view, without disturbing it—is not a 'search' for Fourth Amendment purposes, and therefore does not even require reasonable suspicion."); *cf. Ker v. California*, 374 U.S. 23, 36-37 (1963) (finding that it was reasonable for the officer to go to the door and look in, and that when he saw the brick of marijuana, he was not engaged in any search at all). The discovery of the Sudafed was lawful.

### ii.    Probable Cause

Once Officer Hoover looked inside the truck, saw what he believed to be seven boxes of Sudafed containing pseudoephedrine, and identified Carr as the truck's owner, we conclude he had probable cause to effectuate a warrantless arrest.

"Probable cause for a warrantless arrest exists when the totality of facts and circumstances within a police officer's knowledge at the moment of the arrest are sufficient for a reasonable person to conclude that the suspect had committed or was committing an offense." *United States v. Ho*, 94 F.3d 932, 935-36 (5th Cir. 1996). Probable cause requires substantially less evidence than that sufficient to support a conviction. *Id.*

As noted, Mississippi Code § 41-29-313 limits the amount of Sudafed containing pseudoephedrine that a person can possess, as this type of Sudafed is used to make crystal methamphetamine. *See, e.g., Williamson v. State*, 876 So. 2d 353, 354 (Miss. 2004) ("[The officer] discovered several boxes of Sudafed. . . . [T]hese chemicals constitute precursors used in the

illegal manufacture of controlled substances."); *Venezia v. State*, 203 So. 3d 1, 3 (Miss. Ct. App. 2016) ("It was learned [that the defendant] had purchased Sudafed, the main ingredient in methamphetamine.").

Officer Hoover saw, inside the truck, large quantities of what he reasonably—although mistakenly—believed to be a controlled substance. *See* MISS. CODE ANN. § 41–29–313(c) (West 2018) ("[Possessing p]roducts containing more than twenty-four (24) grams of . . . pseudoephedrine . . . constitute[s] a rebuttable presumption of intent to use the product as a precursor to methamphetamine or another controlled substance."). Carr admitted to Officer Hoover that the truck belonged to him. This is enough to establish probable cause. *Cf. United States v. Anderson,* 500 F.2d 1311, 1317 (5th Cir. 1974) ("[T]he discovery of marijuana in the trunk of the car certainly provided probable cause for the arrest."); *Williamson*, 876 So.2d at 353 (affirming a trial court's denial of a motion to suppress where an anonymous tip to police provided information that two men purchased large quantities of Sudafed).

Certainly, Officer Hoover, after arresting Carr and transporting him for booking, was informed that the Sudafed in the truck contained phenylephrine and not pseudoephedrine—the precursor to crystal methamphetamine. This mistake of fact, however, is of no moment, for the totality of the circumstances suggest Officer Hoover's mistake was a reasonable one. *See Heien v. North Carolina*, 574 U.S. 54, 61 (2014) ("We have recognized that searches and seizures based on mistakes of fact can be reasonable.").

After all, Officer Hoover was at the scene in the dimly-lit early-morning hours. He spotted seven boxes of Sudafed together on the truck's consol. After asking Carr why he had so many boxes of Sudafed, Officer Hoover received no clear answer. Officer Hoover could only see the that the packages were labeled with the word "Sudafed." *See Ho*, 94 F.3d at 935-36

No. 18-60603

("Probable cause for a warrantless arrest exists [based on] the totality of facts and circumstances within a police officer's knowledge at the moment of the arrest . . . ."); *United States v. Nicholson*, 721 F.3d 1236, 1244 (10th Cir. 2013) ("A totality of the circumstances approach makes sense in this factfinding role, because officers can exercise their judgment based on their experience and common sense.") (citing *United States v. Cortez,* 449 U.S. 411, 418 (1981) ("[T]he evidence . . . must be seen and weighed not in terms of library analysis by scholars, but as understood by those versed in the field of law enforcement.")); *see, e.g., United States v. Jones*, No. L–12–10, 2012 WL 1309837, at *6 (S.D. Tex. Apr. 16, 2012) (finding an officer's misreading of a letter "I" for a number "1" to be a reasonable mistake given the fighting conditions and distance). And, the Fourth Amendment permits both reasonable mistakes of law and fact. *See Heien*, 574 U.S. at 61 (2014); *see also Hill v. California*, 401 U.S. 797, 804 (1971) (noting that "sufficient probability, not certainty, is the touchstone of reasonableness under the Fourth Amendment"). Officer Hoover's reasonable mistake of fact, therefore, leaves undisturbed our conclusion that he had sufficient probable cause to effectuate the arrest.[4]

---

[4] All types of Sudafed contain "a nasal decongestant, either pseudoephedrine or phenylephrine." Carr argues that all Officer Hoover had to do to differentiate between Sudafed with pseudoephedrine and Sudafed with phenylephrine was "read the label." Officer Hoover attested to the fact that what he could see was a clear "Sudafed" label on a large quantity of boxes. And he relied on his knowledge that possessing a large quantity of Sudafed containing pseudoephedrine is prohibited, as it is used to manufacture crystal methamphetamine. Should any doubt remain as to whether Officer Hoover had probable cause to effectuate the Sudafed Arrest, however, it is inconsequential; Officer Hoover is entitled to qualified immunity if he "reasonably but mistakenly conclude[d] that probable cause [wa]s present." *D.C. v. Wesby*, 138 S. Ct. 577, 591 (2018) (quoting *Anderson v. Creighton*, 483 U.S. 635, 641 (1987)) (alterations in original). Under these facts, Officer Hoover—at minimum—had "arguable probable cause" to effectuate the Sudafed Arrest. *See Mendenhall v. Riser*, 213 F.3d 226, 230 (5th Cir. 2000) ("[I]f officers of reasonable competence could disagree on [probable cause], immunity should be recognized.").

### iii.    Fruit of the Poisonous Tree

But liberally construing Carr's *pro se* briefs, as we must, *see Grant v. Cuellar*, 59 F.3d 523, 524 (5th Cir. 1995), it appears Carr's challenge to the Sudafed Arrest's constitutionality is also based on Officer Hoover's initial conduct at 463 Sunflower Lane. And, to be sure, if Officer Hoover acted unconstitutionally and thereafter discovered the Sudafed as a direct result of his illegal conduct, any analysis considering whether Carr's arrest was supported by probable cause might not legally depend on the Sudafed as evidence. *See United States v. Hernandez*, 670 F.3d 616, 621 (5th Cir. 2012) (holding that "the officers could not have relied on Hernandez's admission . . . as probable cause to arrest her, because the officers' Fourth Amendment violation had already occurred, tainting Hernandez's admission"). In other words, the Sudafed would be considered "fruit of the poisonous tree." *Strieff*, 136 S. Ct. at 2061.

While courts must exclude "primary evidence obtained as a direct result of an illegal search or seizure" and "evidence later discovered," *Id.* (quoting *Segura v. United States*, 468 U.S. 796, 804 (1984)), otherwise-suppressible evidence will still be admitted if the connection between the unconstitutional conduct and the evidence is "so attenuated as to dissipate the taint." *United States v. Grosenheider*, 200 F.3d 321, 327 (5th Cir. 2000); *see Strieff*, 136 S. Ct. at 2061 (elaborating on the attenuation doctrine).

In this case, although Officer Hoover ordered Carr out of the house and onto the ground, Officer Hoover's knock and subsequent commands were not, in any sense, the but-for cause of the discovery of the Sudafed. "Our cases show that but-for causality is . . . a necessary . . . condition for suppression." *Hudson v. Michigan*, 547 U.S. 586, 592 (2006) ("In this case, of course, the constitutional violation of an illegal *manner* of entry was *not* a but-for cause of obtaining the evidence.") (emphasis in original). Indeed, Officer Hoover did not ask any of the occupants to lead him to the truck nor

No. 18-60603

did he command them to unlock the vehicle. The discovery of the Sudafed depended simply on the fact that Officer Hoover could see seven boxes of it on the truck's console. We agree with the district court, then, that the Sudafed Arrest was supported by probable cause and did not violate Carr's Fourth Amendment rights.

To the extent Carr intends to challenge the legality of Officer Hoover's initial conduct at 463 Sunflower Lane independently, we find Carr waived the relevant arguments on appeal.

### b) Waived Arguments

Much of the district court's opinion, Carr's brief, and Officer Hoover's response focus on a 911 call, which may or may not have been placed. According to Officer Hoover, it was pursuant to this call—and a woman's cries he claims to have heard—that Officer Hoover drove to the 400 block of Sunflower Lane and knocked on the door of house number 463. Perhaps, but for that call and the alleged cries, Officer Hoover would have had no reason to walk onto the property, knock on the door, announce his presence as a police officer, and command the occupants out of the house and onto the ground.

But whether Officer Hoover's voice commands[5] constituted a seizure—separate from the Sudafed Arrest—for purposes of the Fourth Amendment is not a question properly before us. The district court found that "[t]he sole issue remaining in this case is whether Officer Lloyd Hoover had probable cause to arrest Mr. Carr for possession of a controlled substance." *Carr v. Hoover*, No. 4:16CV88-MPM-DAS, 2018 WL 3636563,

---

[5] We note that it is well established that no matter how unwelcome, *Florida v. Jardines*, 569 U.S. 1, 8 (2013), a police officer's warrantless knock on the door does not on its own intrude on privacy expectations protected by the Fourth Amendment. *See Kentucky v. King*, 563 U.S. 452, 469–70 (2011).

at *6 (N.D. Miss. July 31, 2018 ). Carr has not separately argued—neither before the district court nor on appeal—that Officer Hoover's voice commands alone violated his Fourth Amendment rights.[6]

By failing to raise these arguments, Carr has abandoned them. *Yohey v. Collins*, 985 F.2d 222, 225 (5th Cir. 1993) ("Although we liberally construe the briefs of *pro se* appellants, we also require that arguments must be briefed to be preserved."); *see Brinkmann v. Dall. Cnty. Deputy Sheriff Abner*, 813 F.2d 744, 748 (5th Cir. 1987) ("We will not raise and discuss legal issues that [the appellant] has failed to assert.").

The only issue before us is whether summary judgment was proper on the claim that Carr was "unlawfully arrested and searched without a warrant and probable cause," as a result of Officer Hoover's discovery of the Sudafed. There are no disputed issues of material fact precluding a finding, as a matter of law, that Officer Hoover acted constitutionally in effectuating the Sudafed Arrest.

## IV.

Because we conclude that Carr's arrest was not an unreasonable seizure under the Fourth Amendment, we AFFIRM the district court's grant of summary judgment below.

---

[6] To the extent Carr argues that Officer Hoover's knock and subsequent commands were implicated in deciding whether Officer Hoover "had probable cause to arrest Mr. Carr for possession of a controlled substance," *id.*, we have fully addressed these arguments above. We concluded that Officer Hoover's initial conduct at 463 Sunflower Lane was sufficiently attenuated from his discovery of the Sudafed so as to not have affected the constitutionality of the Sudafed Arrest.